**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JUDGE RONALD GUZMAN

| | |
|---|---|
| STEPHEN RAY, WALTER THOMAS PRICE, THE PRICE FUTURES GROUP, and MAN FINANCIAL INC, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| MELVIN VON BERGEN, MICHAEL P. VON BERGEN, and BOBETTE K. VON BERGEN, | ) ) ) |
| Defendants. | ) ) ) |

03C 1115

No. ~

MAGISTRATE JUDGE KEYS

DOCKETED
FEB 1 4 2003

U.S. DISTRICT COURT CLERK
03 FEB 13 PM 3: 22
FILED-EDA

**COMPLAINT FOR DECLARATORY JUDGMENT
AND INJUNCTIVE RELIEF**

Plaintiffs, STEPHEN RAY, WALTER THOMAS PRICE, THE PRICE FUTURES

GROUP, ("The Price Group"), and MAN FINANCIAL INC, ("Man Financial"), bring this action

for declaratory judgment and injunctive relief against all defendants named herein as follows:

**INTRODUCTION**

1.     Plaintiffs bring this action to enjoin defendants from pursuing and continuing

arbitration proceedings against them before the National Futures Association ("NFA") on the

ground that defendants' claim is barred by the two year NFA statute of limitations and are

therefore not arbitrable.

2.     This action invokes the power of the Court under the Declaratory Judgment Act, 28

U.S.C. § 2201.

1



3.    The arbitration demand filed by defendants with the NFA falls within the Federal

Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, in that the underlying transactions and the

arbitration clauses sought to be enforced herein involve and concern commodity futures and

options transactions involving commerce as defined in the FAA.  9 U.S.C. § 1 & 2.

**THE PARTIES**

4.    Plaintiff Price Futures is an Illinois corporation with its principal place of business in

Chicago, Illinois.  Price Futures is registered with the Commodities Futures Trading Commission

("CFTC") as an Introducing Broker under Section 4d of the Commodity Exchange Act, 7 U.S.C.

§ 6d.  Price Futures introduces members of the investing public to commodity brokerage houses

and renders advice and other services to its clients.  As an introducing broker, Price Futures

solicits and accepts orders for futures and option trades and places those trades with a clearing

broker, with whom customers, including the defendants herein, maintained customer accounts.

5.    Plaintiff Man Financial is a New York corporation with its principal place of business in

Chicago, Illinois.  Man Financial is registered with the Commodities Futures Trading

Commission ("CFTC") as a Futures Commission Merchant.

6.    Stephen Ray and Walter Thomas Price are officers and employees of Price Futures and

are themselves citizens of the State of Illinois.

7.    Defendants Melvin Von Bergen and Bobette K. Von Bergen are citizens of the state of

Illinois, whose last known address was 9805 Route 173, Hebron, IL, 60034.  Defendant Michael

P. Von Bergen is also a citizen of the state of Illinois, whose last known address is 9719 Route

173 Hebron, IL 60034.  The amount in controversy as to these defendants is $100,000.00.

2

## JURISDICTION AND VENUE

8.    As to all defendants, the federal district court has jurisdiction over this matter pursuant to

28 U.S.C. § 1331, i.e., the district court shall have original jurisdiction of all civil actions arising

under the Constitution, laws, or treaties of the United States.  Specifically, the claim in this

matter arises under the Commodity Exchange Act 7 U.S.C. § 6d.

9.    This Court has personal jurisdiction over defendants because the customer contract states

each customer consents to the jurisdiction of the United States District Court for the Northern

District of Illinois and the defendant has filed a claim for arbitration with the NFA whose

principle place of business is in Chicago, Illinois.

10.    Under 28 U.S.C. § 1391(b), venue is proper in this judicial district because a substantial

part of the events and omissions giving rise to the plaintiffs' claims herein occurred in this

district.  In addition, defendant agreed to venue in this judicial district when they signed the

customer agreement.  (Copies of the agreement is attached hereto as Exhibit 1.)

## CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF

11.    In June 2000, defendants were party to a "Commodity Brokerage Agreement"

("Agreement") with Price Futures which they had entered into prior to this time.  (See Exhibit 1.)

That agreement provided that all disputes were to be submitted to arbitration.

12.    Pursuant to the Agreement, Price Futures provided trading advice to, placed commodity

futures and options orders for, and rendered other services on behalf of the defendants.

13.    Disputes have arisen over trading in defendants' account which defendants allege

occurred in June 2000.

14.    As a result of those events of June 2000, defendants filed a demand for arbitration on

3

December 2, 2002, with the NFA alleging, in part, violations of the Commodity Exchange Act.

15.    Defendants allege that unauthorized trades were made in their account in June of 2000. (See Von Bergen Claim Form para. 5(c)(7) , attached as Exhibit 2.)  The Von Bergens state that after receiving their monthly June 2000 statement, Melvin Von Bergen called their broker, Stephen Ray, to complain about the unauthorized trades.  According to the NFA Arbitration Complaint,  Ray responded "that the trades had been made and there was nothing that could be done about them".  (See Von Bergen Complaint para. 5(c)(8).)  Therefore, by the Von Bergen's own admission, they were aware of the alleged unauthorized trades in June 2000.

16.    Defendant's Complaint also alleges that Ray made two more unauthorized trades in July of 2000.  (See Von Bergen Complaint para. 5(c)(11).)

17.    Since Defendants knew of the unauthorized trading in June and July of 2000, the two-year statute of limitations expired in July 2002.

18.    Defendants state that they first learned of a remedy, "sometime after February 21, 2001, when Mr. Von Bergen heard that another farmer had filed a demand for arbitration against Mr. Ray." (See Von Bergen Claim Form para. 5(c)(12).)

19.    The NFA two year statute of limitations provision paragraph 6529 states that:

> "No demand for arbitration may be arbitrated under these Rules unless a Demand or notice of intent to arbitrate is received by NFA within two years from the date when the party filing the Demand for Arbitration *knew or should have known of the act or transaction that is the subject of the controversy*." (emphasis added).  (See Exhibit 3 attached hereto).

20.    The NFA statute of limitation does not apply to the time when the claimant first learned

4

of a remedy. The statute of limitations commences when the claimant knew or should have known of *the act or transaction.* The Von Bergens admit that they learned of the act or transaction after receiving their monthly June 2000 statement. (See Von Bergen Claim Form 5(c)(8).) Thus, the Complaint is time barred as a matter of law.

21.    Defendants' claim was filed more than two years after the occurrence of the underlying transactions.

22.    Because that claim was untimely filed in violation of the NFA two year statute of limitation period contained in the NFA Code of Arbitration, the claim is not arbitrable.

23.    Therefore, plaintiff is entitled to a temporary restraining order and preliminary and permanent injunctions barring defendant from proceeding with those arbitrations.

24.    Price Futures and Man Financial have no adequate remedy at law, are likely to succeed on the merits and will suffer irreparable harm if they are forced to arbitrate the claim of defendants. There are no interests of public policy weighing against the issuance of the requested injunctions and the balancing of the harms weighs heavily in plaintiffs' favor.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment in their favor and grant the following relief:

A.    An order declaring that defendants' claim is time-barred for failure to initiate arbitration within the contractual two year time limit imposed by NFA;

B.    A preliminary injunction barring defendants from pursuing any and all arbitration proceedings pending the hearing and determination of this action;

C.    An order permanently enjoining defendants from pursuing the arbitrations they

5

initiated before the NFA;

D.     Costs and attorneys fees against all defendants as may be permitted by law; and

E.     Such other reliefs as the Court deems just and appropriate.

Respectfully submitted,

James B.  Koch

GARDINER KOCH & WEISBERG
Firm No. 29637
53 W. Jackson Blvd., Suite 1550
Chicago, Illinois 60604
Telephone 312.362.0000
Facsimile 312.362.0440

**F2** **LIT DIVISION**
**FIRST OPTIONS OF CHICAGO, INC.**

# CUSTOMER ACCOUNT AGREEMENT
# FUTURES AND OPTIONS ON FUTURES

In consideration of the LIT Division of First Options of Chicago, Inc. ("Broker") accepting and maintaining one or more accounts and agreeing to act as broker for the undersigned ("Customer"), Customer acknowledges and agrees to the following terms and conditions with respect to any of Customer's accounts with Broker or Broker's affiliates for the purchase and sale of commodities, commodity futures contracts, commodity options and other property.

## 1. TRANSACTIONS SUBJECT TO INDUSTRY REGULATIONS AND STANDARDS

All transactions shall be subject to the regulations of all applicable government authorities and self-regulatory agencies including, but not limited to, the constitutions and rules of the clearing house, exchange, or market where executed. Customer understands that Broker is obligated to comply with all applicable laws and regulations including those of regulatory and self-regulatory organizations and agrees that Broker shall not be liable to Customer as a result of any action taken by Broker to comply with any ruling, interpretation or directive of such organization.

## 2. MARGIN AND COLLATERAL

Customer will maintain such margin and collateral as Broker may require from time to time and will pay on demand any amount owing with respect to any of Customer's accounts. Customer understands that Broker's margin requirements may exceed those set by any exchange and may be increased without prior notice, including with respect to existing positions.

**All Accounts Considered as a Single Account.** If Customer, now or in the future, has more than one Account with Broker, all of the Accounts (i) will be considered to be a single Account to the extent that any funds or property in any one Account may be used to cover margin calls or deficits in any other such Account, and (ii) shall be subject to the provisions of Sections 3, 4, 5 and 6 hereof.

Customer acknowledges that if Broker fails to receive sufficient funds to pay for any commodity or to satisfy any demand for initial or variation margin within a reasonable time after demand, and, in the absence of unusual circumstances, one hour shall be deemed a reasonable time, Broker shall be entitled, but not obligated, to sell any property held by Broker in any of Customer's accounts, offset any open positions and liquidate Customer's accounts in whole or in part. Customer recognizes that under present regulations and practices Broker is not required to give Customer prior notice of such actions and Customer will be liable for any resulting loss.

## 3. SECURITY INTEREST

To secure all obligations of Customer to Broker hereunder, whether now existing or hereafter arising, Customer grants to Broker a security interest in and to all of Customer's now existing or owned and hereafter arising or acquired: (i) memberships on any securities or commodity exchange or any interest therein; (ii) accounts, chattel paper, contract rights, instruments, documents and general intangibles; (iii) inventory; (iv) goods (other than inventory), equipment, vehicles, and fixtures, together with all accessories, accessions and parts thereto; (v) all monies, reserves, deposits, deposit accounts and interests or dividends thereon, if any, securities, Commodities, cash, cash equivalents, and other property now or at any time or times hereafter held in Customer's Account(s) or in the possession of or under the control of Broker or its bailee; and (vi) all products, proceeds arising out of liquidation of Customer's Account(s), in whole or in part. Any of the foregoing may from hereafter held or carried by Broker for Customer may from time to time without notice to Customer be pledged, hypothecated, loaned or invested by Broker to or with Broker or others, separately or with any other property (and

without limiting the generality of the foregoing, may be used by Broker in securities repurchase and reverse repurchase agreements with others); provided that, such rights of Broker shall be qualified by applicable requirements for the segregation of customer funds and property under applicable law. Broker shall be under no obligation to deliver to Customer the identical property deposited with Broker or received by Broker for the account of Customer but only property of the same kind and amount, and Broker shall be under no obligation to pay to Customer, or to account Customer for, any interest, income or benefits that may be derived from the investment or other use of the property hereunder. Broker may, at any time, in its sole and absolute discretion liquidate any of the above-mentioned items upon the occurrence of any event specified in Section 5 hereof and in accordance with Section 5 hereof and also may transfer said property or assets to the general ledger account of Broker, all without liability on the part of Broker to Customer or any third party. Customer agrees to execute such further agreements, instruments and documents as may be requested by Broker to perfect and maintain perfected the foregoing security interests.

## 4. COMMISSIONS

Customer agrees to pay such commission rates as Broker may from time to time charge, as well as all other costs, service charges and fees (including, without limitation, fees imposed by the National Futures Association, exchanges or other regulatory or self-regulatory organizations) arising out of Broker's provision of services hereunder. If Customer transfers any open Commodity position, including a "Commodity Option," as defined in Section 8 of this Agreement, to another broker, Customer agrees to pay a transaction fee for each open position transferred. Customer understands that Broker may change its commissions without notice. All such charges shall be paid by Customer as they are incurred, or as Broker, in its sole and absolute discretion, may determine, and Customer hereby authorizes Broker to withdraw the amount of any such charges from Customer's Account(s).

## 5. LIQUIDATION

a. In the event of (i) Customer's failure to meet any margin or other obligation hereunder; (ii) Customer's death, dissolution or legal incompetence; (iii) the filing of any petition in bankruptcy, or the institution of any insolvency or similar proceeding by or against Customer; (iv) Customer's Account(s) being levied against or Broker's receiving notice of such levy; (v) Customer's failing to provide Broker any information requested by Broker; (vi) Broker's determining, in its sole and absolute discretion, that such action is appropriate for Broker's protection; (vii) Broker's determining, in its sole discretion that Customer's Account(s) may be placing Broker in violation of exchange rules, in its sole and absolute discretion, is hereby authorized, but is not obligated and shall incur no liability for failure to act, to sell any or all of the securities, Commodities or other property of Customer which may be in Broker's possession, or which Broker may be carrying for Customer, or to buy in any securities, Commodities or other property of which the Account(s) of Customer may be short, to spread or straddle any or all of Customer's open positions or cover Customer's open positions in cash of other markets, to liquidate or cause to be liquidated any open Commodity position purchased or sold by or through Broker for Customer's Account(s), to set off any claim against Customer hereunder against any of the collateral described in Section 3 hereof or any mutual claim of Customer against Broker, to cancel any outstanding orders in order to close out the Account(s) of Customer in whole or in part and to take such other actions as Broker may deem desirable all without any liability on the part of Broker to Customer or any third party. Such actions made according to broker's judgment and may be and absolute discretion, on the exchange or other m

EXHIBIT 1

- 1 -

business is usually transacted, without notice to Customer or the legal representative of Customer, and without prior tender, demand or call of any kind upon Customer or the legal representative of Customer, and Broker may purchase the whole or any part thereof free from any right of redemption, and Customer shall remain liable for any deficiency, it being understood that a prior tender, demand or call of any kind from Broker, or prior notice from Broker, of the time and place of such sale or purchase shall not be considered a waiver of Broker's right to sell or buy any securities, Commodities or other property held by Broker or owned by Customer, at any time as hereinbefore provided or to be deemed to require any such tender, call or notice on any subsequent transactions.

b. In the event of any of the occurrences stated in paragraph (a), or if Broker believes, in its sole and absolute discretion, that execution of any Customer order would contravene the Commodity Exchange Act, as amended ("Act"), the rules and regulations thereunder, or the rules of any exchange or clearing organization, or would otherwise be inappropriate Broker may delay or refuse to execute any order to purchase or sell Commodities for Customer's Account(s).

## 6. FUTURES CONTRACT LIQUIDATING AND DELIVERY INSTRUCTIONS

At least two business days prior to the first notice day in the case of long positions in futures or forward contracts, and at least two business days prior to the last trading day in the case of short positions in futures or forward contracts, Customer agrees either to give Broker instructions to liquidate or make or take delivery under such futures or forward contracts, and will deliver to Broker sufficient funds and any documents required in connection with such delivery. If such instructions or such funds or documents are not received as required by this paragraph, Broker may, without notice to Customer, either liquidate Customer's positions or make delivery or take delivery on Customer's behalf on such terms and conditions as Broker deems reasonable and Customer shall remain liable for all costs, expenses or debit balances incurred in connection therewith.

Where Customer intends to take delivery of the commodity underlying a futures contract, Customer specifically authorized Broker to use the commodity, property, warehouse receipt or evidence of ownership thereof as collateral for a bank loan, the proceeds of which may be used to pay for the commodity, or evidence of ownership thereof, until re-delivery of the commodity and/or payment in full, including interest, by Customer.

## 7. OPTIONS TRANSACTIONS

Customer acknowledges and understands the risks of buying and selling options on commodity futures contracts; the risks of such option trading caused by a limit move in the underlying commodity futures contract; and has been advised of the commissions and fees associated with trading options and of the basis upon which such costs are being charged.

## 8. OPTION CONTRACT LIQUIDATING AND EXERCISING INSTRUCTIONS

Customer is fully responsible for taking action to exercise an option contract. Broker shall not be required to take any action with respect to an option contract, including any action to exercise a valuable option prior to its expiration date, except upon express instructions from Customer. In this connection, Customer undersands that the exchanges, boards of trade, markets and clearing houses have established exercise cut-off times for the tender of exercise instructions and that Customer's options will become worthless in the event that Customer does not deliver instructions by Broker's established expiration times. Customer agrees and further understands that Broker has established cut-off times which may be different from the times established by the exchanges, boards of trade, markets, and clearing houses. Customer hereby agrees to waive any and all claims for damage or loss which Customer might have against Broker arising out of the fact that an option was not exercised.

Customer understands that Broker randomly assigns exercise notices to all customers. All short option positions are subject to assignment at any time, including positions established on the same day that exercises are assigned. Exercise assignment notices are allocated randomly from among all of Broker's customers' short option positions which are subject to exercise.

## 9. POSITION LIMITS

Customer agrees not to exceed the position limits set by any federal agency, exchange or regulatory authority for Customer's accounts, acting alone or in concert with others. Customer acknowledges that Broker has the right to limit the number of positions in Customer's account(s). Customer agrees to abide by all other applicable laws, rules and regulations with respect to maintaining account(s) with Broker. Customer acknowledges that under applicable rules Broker may be required to provide the CFTC or exchanges with information concerning Customer's futures and options positions and related data.

## 10. FOREIGN CURRENCY RISK

Customer agrees that in the event that Customer directs Broker to enter into any transaction on an exchange on which such transactions are effected in a foreign currency: (a) any profit or loss arising as a result of a fluctuation in the exchange rate effecting such currency will be entirely for Customer's account and risk, (b) all initial and subsequent deposits for margin purposes shall be made in U.S. Dollars, in such amounts as Broker may in its sole discretion require, (c) Broker is authorized to convert funds in Customer's account into and from such foreign currency at a rate of exchange determined by Broker in its sole discretion on the basis of then prevailing money markets.

## 11. RESPONSIBILITY FOR LOSSES

Customer agrees and acknowledges that Broker is financially liable to the exchange clearing house of which Broker is a member, and to the clearing members through which Broker clears transactions on exchanges of which Broker is not a clearing member, for deficit balances occurring in Customer's accounts. Customer therefore agrees to hold Broker harmless, indemnify and defend Broker against any and all losses sustained by Broker resulting from deficit balances which may occur in Customer's account(s).

Customer agrees and acknowledges that deficit balances in any of Customer's account(s) shall be charged with interest and such other costs, fees or charges (including reasonable fee of attorneys who may be Broker's employees or employees of Broker's affiliates) as Broker may make in the collection of this deficit.

In consideration for Broker carrying the account(s), Customer will in no way hold Broker responsible for any losses, including losses incurred by Customer following Broker's trading recommendations or suggestions. Customer agrees to give written notification to the Compliance Department in the event of unresolved disputed transactions or other similar problems.

## 12. CONFIRMATION AND STATEMENT OF ACCOUNTS

Reports of executions of orders shall be deemed conclusive and binding immediately upon Customer receiving the report of execution. Statements of account(s) shall be conclusive and binding if not objected to immediately. All communications sent to Customer at the address given to Broker from time to time shall constitute personal delivery to Customer. Customer understands that Broker may tape record conversations without further notice and without assuming responsibility to make or retain such tape recordings.

## 13. AUTHORIZATION TO TRANSFER FUNDS

This will serve as Customer's authority for Broker, whenever in Broker's absolute discretion Broker deems it appropriate, to transfer between Customer's regulated commodity accounts and any other account maintained with Broker, any amount of excess funds, equities, securities or other property. Such transfers shall be used to satisfy margin calls or to reduce or satisfy in full any indebtedness in any of Customer's accounts with broker, provided that Broker shall within a reasonable time after making such transfer, send a written confirmation of the transfer to Customer. "Regulated Commodity"

means any account covered by the Commodity Exchange Act at the time of such transaction.

### 14. EXTRAORDINARY EVENTS
Broker shall not be liable for losses caused directly or indirectly by government restrictions, exchange or market actions, suspension of trading, war, strikes, or for delays in the transmission of orders due to breakdown or failure of transmission or communication facilities, or to any other causes beyond Broker's reasonable control or anticipation.

### 15. THE AGREEMENT
This agreement is made under and shall be covered by the laws of the United States and the State of Illinois. It shall inure to the benefit of Customer's heirs, successors and assigns, as well as Broker's successors, by merger, consolidation or otherwise, and assigns, and Broker may transfer Customer's account(s) to any such successor or assign.

No suit, arbitration, reparations proceeding, claim or action arising out of or relating to this agreement may be maintained by any party to it unless commenced within two years after the claim or cause of action has occurred

If any provisions herein should become inconsistent with laws, rules or regulations of any government or regulatory body having jurisdiction over the subject matter, such provisions shall be deemed to be modified or rescinded in accordance with any such laws, rules or regulations.

If any provision or condition of this agreement shall be held to be invalid or unenforceable by any court, or regulatory or self-regulatory agency or body, such invalidity or unenforceability shall attach only to such provision or condition. The validity of the remaining provisions and conditions shall not be affected and this agreement shall be carried out as if any such invalid or unenforceable provision

or condition were not contained herein.

This agreement may not be terminated or modified orally. This agreement may be amended by written notice to Customer. It shall continue in full force and effect until terminated by Broker or by Customer in writing to Broker's main office. Broker's failure to insist at any time upon strict compliance with any terms of this agreement or any continued course of such conduct on Broker's part shall not constitute a waiver of any of Broker's rights as described herein.

Captions used in this agreement are for convenience of reference only and shall not be construed so as to affect the meaning of the text hereof.

This agreement supersedes any other customer agreement Customer has previously held with Broker.

### 16. VERIFICATION OF INFORMATION
All information furnished to Broker in connection with the opening of Customer's account(s) and all documents supplied by Customer, including financial statements, are true, complete and correct. Broker is entitled to rely on this information until terminated by Broker receives written notice of any change, which Customer agrees to furnish promptly should any material changes occur. As part of this agreement, Customer understands that an investigation may be made pertaining to Customer's credit standing and account. If such investigation is conducted, Customer understands that Customer has the right to make a written request, within a reasonable period of time, for a complete and accurate disclosure of the nature and scope of such investigation. Customer understands that there are risks in trading, some of which are described in the Disclosure Statements delivered to Customer.

Customer has read, fully understood and agrees to the foregoing terms and conditions of the Customer Agreement.

FOR CORPORATIONS/PARTNERSHIPS

_____
Print Name of Corporation or Partnership

_____
Authorized Signature                     Date

_____
Print Name & Title

FOR INDIVIDUAL/JOINT ACCOUNTS
(All account participants must sign)

*Melvin B Von Bergen*            2-5-98
Signature                        Date

*Michael Von Bergen*             2-5-98
Signature                        Date

*Bobette Von Bergen*             2-5-98
Signature                        Date

## NATIONAL FUTURES ASSOCIATION

# Arbitration Claim Form          NFA Code of Arbitration

Use the following map to go backward and use the 'Next' button on the bottom of the page to go forward.
Do not use the browser 'Back' button.

| Claimant Information | Representative Information | Respondent Information | Claim Amt and Fees | Explanation | Proceeding Information | Documents | Final Statement |
|---|---|---|---|---|---|---|---|
|  | 2 | 3 | 4 | 5 | 6 | 7 | 8 |

**1. Claimant Information** - A Claimant is a person who believes he/she is owed money. For a joint account, everyone who is listed on the account should be named as a Claimant. For a partnership, corporation or other entity, the entity should be listed as the Claimant. You must enter at least one Claimant.

*Claimant Name 1: `Melvin Von Bergen`
* ⦿ Home          ○ Business
*Address Line 1: `9805 Route 173`
Address Line 2: 
Address Line 3: 
*City: `Hebron`
*State: `Illinois`     *Zip: `60034`
*Day Phone: `815.648.2783`
Evening Phone: 
Fax: 
*E-Mail: `none`

Claimant Name 2: `Michael P. Von Bergen`
⦿ Home          ○ Business
Address Line 1: `9719 Route 173`
Address Line 2: 
Address Line 3: 
City: `Hebron`
State: `Illinois`     Zip: `60034`
Day Phone: `815.648.4706`
Evening Phone: 
Fax: 
E-Mail: 

Claimant Name 3: `Bobette K. Von Bergen`
⦿ Home          ○ Business
Address Line 1: `9805 Route 173`
Address Line 2: 
Address Line 3: 

EXHIBIT
2

City: Hebron

State: Ilinois     Zip: 60034

Day Phone: 815.648.2783

Evening Phone:

Fax:

E-Mail:

[ Add another Claimant ]                    [ Next >> ]

*Denotes required field

© 2001 National Futures Association
Claim Help

# NATIONAL FUTURES ASSOCIATION

# Arbitration Claim Form    NFA Code of Arbitration

Use the following map to go backward and use the 'Next' button on the bottom of the page to go forward.
Do not use the browser 'Back' button.

| Claimant Information | Representative Information | Respondent Information | Claim Amt and Fees | Explanation | Proceeding Information | Documents | Final Statement |
|---|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |

**2. Representative Information** – If the Claimant(s) will be represented by an
attorney or other representative, please enter his/her information.  If there are none,
click 'Next'.

Representative Name 1: Ted Waskowski

Business Address Line 1: Stafford Rosenbaum LLP

Line 2: 3 South Pinckney Street

Line 3: P.O. Box 1784

City: Madison

State: Wisconsin    Zip: 53701-1784

Phone: 608.259.2613

Fax: 608.259.2600

E-Mail: twaskowski@staffordlaw.com

Indicate if the representative is an attorney or non-attorney:

○ Attorney - States admitted to practice and bar number: WI State Bar No. 1003254

○ Non-Attorney: ○ Officer, Partner, Employee ○ Family Member ○ Other

Representative Name 2: Amie B. Feddema

Business Address Line 1: Stafford Rosenbaum LLP

Line 2: 3 South Pinckney Street

Line 3: P.O. Box 1784

City: Madison

State: Wisconsin    Zip: 53701-1784

Phone: 608.259.2672

Fax: 608.259.2600

E-Mail: afeddema@staffordlaw.com

Indicate if the representative is an attorney or non-attorney:

○ Attorney - States admitted to practice and bar number: WI State Bar No. 1041768

○ Non-Attorney: ○ Officer, Partner, Employee ○ Family Member ○ Other

Add another representative    Next >

© 2001 National Futures Association

**NATIONAL FUTURES ASSOCIATION**

# Arbitration Claim Form          NFA Code of Arbitration

Use the following map to go backward and use the 'Next' button on the bottom of the page to go forward.
Do not use the browser 'Back' button.

| Claimant Information | Representative Information | Respondent Information | Claim Amt and Fees | Explanation | Proceeding Information | Documents | Final Statement |
|---|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |

**3. Respondent Information** – Enter each firm and/or individual (a Respondent) you
believe is responsible for the loss and want to recover money from. **ANYONE YOU
DO NOT NAME HERE IS NOT A RESPONDENT, WHICH MEANS YOU CANNOT
RECOVER MONEY FROM THAT PERSON.** You must enter at least one Respondent.

|  |  |
|---|---|
| *Respondent Name 1: | Stephen Ray |
| Business Address Line 1: | The Price Futures Group, Inc. |
| Line 2: | 141 West Jackson Boulevard |
| Line 3: | Chicago Board of Trade Annex |
| City: | Chicago |
| State: | Illinois | Zip: 60604 |
| Phone: | |
| Fax: | |
| E-mail: | |

|  |  |
|---|---|
| Respondent Name 2: | Walter Thomas Price |
| Business Address Line 1: | The Price Futures Group, Inc. |
| Line 2: | 141 West Jackson Boulevard |
| Line 3: | Chicago Board of Trade Annex |
| City: | Chicago |
| State: | Illinois | Zip: 60604 |
| Phone: | |
| Fax: | |
| E-mail: | |

|  |  |
|---|---|
| Respondent Name 3: | The Price Futures Group, Inc. |
| Business Address Line 1: | 141 West Jackson Boulevard |
| Line 2: | Chicago Board of Trade Annex |
| Line 3: | |
| City: | Chicago |
| State: | Illinois | Zip: 60604 |
| Phone: | |
| Fax: | |
| E-mail: | |

| | |
|---|---|
| Respondent Name 4: | E D & F Man International Inc. |
| Business Address Line 1: | Two World Financial Center |
| Line 2: | 225 Liberty Street, 27th Floor |
| Line 3: | |
| City: | New York |
| State: | New York    Zip: 10281-2700 |
| Phone: | |
| Fax: | |
| E-mail: | |

[ Add another Respondent ]          [ Next >> ]

*Denotes required field

© 2001 National Futures Association
Claim Help

**NATIONAL FUTURES ASSOCIATION**

# Arbitration Claim Form        NFA Code of Arbitration

Use the following map to go backward and use the 'Next' button on the bottom of the page to go forward.
Do not use the browser 'Back' button.

| Claimant Information | Representative Information | Respondent Information | Claim Amt and Fees | Explanation | Proceeding Information | Documents | Final Statement |
|---|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |

### 4. Claim amount and fees

a.   Enter the claim amount.  Include all amounts you want to recover, including punitive and treble damages.  Do not include interest, costs, attorney's fees and other expenses.  Request them under 'b'.

$ `100000`  * (Do not use commas.)

Click here to calculate the fees you owe NFA. ▶ `Calculate`

Filing Fees:                                               $1050.00
Hearing Fees:                                              $1275.00
Total Fees:                                                $2325.00

b.   Explain how you calculated the claim amount.

> The Von Bergens lost more than $100,000 as a
> result of the unauthorized trades Mr. Ray made
> for their account.

c.   Do you also request interest, costs, attorney's fees and other expenses incurred as part of the arbitration proceeding?

⦿ Yes ○ No

If Yes, describe below:

> The Von Bergens request interest, costs, and
> attorney's fees as allowed by law.



© 2001 National Futures Association
Claim Help

Dates and Explanation for Claim                                                                Page 1 of 1

## NATIONAL FUTURES ASSOCIATION

# Arbitration Claim Form        NFA Code of Arbitration

Use the following map to go backward and use the 'Next' button on the bottom of the page to go forward.
Do not use the browser 'Back' button.

| Claimant Information | Representative Information | Respondent Information | Claim Amt and Fees | Explanation | Proceeding Information | Documents | Final Statement |
|---|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |

## 5. Dates and Explanation

a. Give the start and end date of the dispute.

**Start Date:** June   09   2000

**End Date:** July   12   2000

b. Give the date the Claimant(s) first knew that a dispute existed. Indicate the month, day, and year. However, if this date is not within the last two years, you cannot file your claim at NFA.

\*Date First Knew: February   21   2001

c. Describe the basis for the claim as completely as possible. Explain what happened, when it happened, what you believe went wrong, who is to blame and why. **YOU MUST EXPLAIN WHY YOU HAVE NAMED EACH RESPONDENT.\***

> 1. In 1998, Melvin, Michael, and Bobette Von Bergen opened a hedge account with Stephen Ray, an Associated Person of The Price Futures Group, Inc. Mr. Price is also an Associated Person of The Price Futures Group, Inc., and upon information and belief, supervised the actions of Mr. Ray. Upon information and belief, The Price Futures Group, Inc. is an Introducing Broker, and E D & F Man International Inc. is a Futures Commission Merchant.
>
> 2. Mr. Ray and The Price Group marketed these hedge accounts as insurance policies protecting a farmer's corn crop from fluctuations in the market. The general strategy behind the Von Bergens' hedge account was to put a floor in the market.
>
> 3. Hedge accounts are intended to be conservative investments, rather than speculative ventures. In fact, one of the documents that the Von Bergens signed stated the following: "It is agreed that positions carried in this account will be strictly for hedge purposes, and not for speculation, and that a separate account must be used to



\*Denotes required field

© 2001 National Futures Association
Claim Help

## NATIONAL FUTURES ASSOCIATION

# Arbitration Claim Form     NFA Code of Arbitration

Use the following map to go backward and use the 'Next' button on the bottom of the page to go forward.
Do not use the browser 'Back' button.

| Claimant Information | Representative Information | Respondent Information | Claim Amt and Fees | Explanation | Proceeding Information | Documents | Final Statement |
|---|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |

## 5. Dates and Explanation

    a.    Give the start and end date of the dispute.

           **Start Date:** June | 09 | 2000

           **End Date:** July | 12 | 2000

    b.    Give the date the Claimant(s) first knew that a dispute existed. Indicate the month, day, and year. However, if this date is not within the last two years, you cannot file your claim at NFA.

           **\*Date First Knew:** February | 21 | 2001

    c.    Describe the basis for the claim as completely as possible. Explain what happened, when it happened, what you believe went wrong, who is to blame and why. **YOU MUST EXPLAIN WHY YOU HAVE NAMED EACH RESPONDENT.\***

> accomodate non-hedge trades. It is further agreed that you can rely on the representation that all trades made in this account are bona fide hedges and that you shall have no obligation to inquire or verify the nature of such trades or incur any liability if, in fact, they may not be such."
>
> 4. The Von Bergens did not have a discretionary hedge account. Therefore, under the law (CFTC Regulation section 166.2), Mr. Ray was required to obtain their authorization regarding the type of contract, the price and number of contracts, and whether to buy or sell prior to making a trade.
>
> 5. Despite the fact that the Von Bergens did not have a discretionary account, Mr. Ray made several trades in 2000 without their authorization.
>
> 6. On January 19, 2000, Mr. Ray bought 80 December 240 corn puts. This trade established the Von Bergens' floor in the market. The total cost of this position was approximately $80,000.



\*Denotes required field

© 2001 National Futures Association
Claim Help

**NATIONAL FUTURES ASSOCIATION**

# Arbitration Claim Form          NFA Code of Arbitration

Use the following map to go backward and use the 'Next' button on the bottom of the page to go forward.
Do not use the browser 'Back' button.

| Claimant Information | Representative Information | Respondent Information | Claim Amt and Fees | Explanation | Proceeding Information | Documents | Final Statement |
|---|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |

## 5.  Dates and Explanation

a.  Give the start and end date of the dispute.

**Start Date:**  June  09  2000

**End Date:**  July  12  2000

b.  Give the date the Claimant(s) first knew that a dispute existed.  Indicate the month, day, and year.  However, if this date is not within the last two years, you cannot file your claim at NFA.

*Date First Knew:  February  21  2001

c.  Describe the basis for the claim as completely as possible.  Explain what happened, when it happened, what you believe went wrong, who is to blame and why.  **YOU MUST EXPLAIN WHY YOU HAVE NAMED EACH RESPONDENT.***

> 7.  On June 9, 2000, Mr. Ray made two trades in the Von Bergen account without first obtaining their authorization. On June 9, Mr. Ray sold 80 December 280 corn puts and bought 27 December 270 corn calls.
>
> 8.  The Von Bergens did not even learn that the trades had been made until they received their June statement.  After receiving the June statement, Mr. Von Bergen called Mr. Ray to complain about the unauthorized trades.  Mr. Ray responded with words to the effect that the trades had been made and that there was nothing that could be done about them.
>
> 9.  The 280 puts were utter speculation, inconsistent with the general hedge plan, and almost immediately disasterous. The price of corn fell rapidly in June after Mr. Ray made these trades and wiped out all of the equity in the open positions.  The effect of the unauthorized trades wiped out the floor that the Von Bergens had in the market.

Next >>

*Denotes required field

© 2001 National Futures Association
Claim Help

**NATIONAL FUTURES ASSOCIATION**

# Arbitration Claim Form    NFA Code of Arbitration

Use the following map to go backward and use the 'Next' button on the bottom of the page to go forward.
Do not use the browser 'Back' button.

| Claimant Information | Representative Information | Respondent Information | Claim Amt and Fees | Explanation | Proceeding Information | Documents | Final Statement |
|---|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |

## 5.  Dates and Explanation

a.   Give the start and end date of the dispute.

**Start Date:** June   09   2000

**End Date:** July   12   2000

b.   Give the date the Claimant(s) first knew that a dispute existed. Indicate the month, day, and year. However, if this date is not within the last two years, you cannot file your claim at NFA.

**\*Date First Knew:** February   21   2001

c.   Describe the basis for the claim as completely as possible. Explain what happened, when it happened, what you believe went wrong, who is to blame and why. **YOU MUST EXPLAIN WHY YOU HAVE NAMED EACH RESPONDENT.\***

10.  Since the unauthorized trades that Mr. Ray made on June 9 were highly speculative, risky, and wholly inconsistent with a hedge strategy, Mr. Ray also breached the contract that guaranteed that the transactions would be strictly for hedge purposes, and not for speculation.

11.  Despite the fact that Mr. Von Bergen had complained, Mr. Ray made two more unauthorized trades in July, 2000. On July 5, Mr. Ray bought 40 December 180 corn puts. On July 12, Mr. Ray bought 40 December 210 corn calls. The Von Bergens incurred losses on these unauthorized trades as well.

12.  The Von Bergens did not know that they had any right to remedy the situation. Mr. Von Bergen first learned that there was a possibility that something could be done sometime after February 21, 2001, when Mr. Von Bergen heard that another farmer had filed a demand for arbitration against Mr. Ray.

Next >>

\*Denotes required field

© 2001 National Futures Association
Claim Help

## NATIONAL FUTURES ASSOCIATION

# Arbitration Claim Form          NFA Code of Arbitration

Use the following map to go backward and use the 'Next' button on the bottom of the page to go forward.
Do not use the browser 'Back' button.

| Claimant Information | Representative Information | Respondent Information | Claim Amt and Fees | Explanation | Proceeding Information | Documents | Final Statement |
|---|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |

## 5.  Dates and Explanation

a.  Give the start and end date of the dispute.

   **Start Date:** June | 09 | 2000

   **End Date:** July | 12 | 2000

b.  Give the date the Claimant(s) first knew that a dispute existed. Indicate the month, day, and year. However, if this date is not within the last two years, you cannot file your claim at NFA.

   **\*Date First Knew:** February | 21 | 2001

c.  Describe the basis for the claim as completely as possible. Explain what happened, when it happened, what you believe went wrong, who is to blame and why. **YOU MUST EXPLAIN WHY YOU HAVE NAMED EACH RESPONDENT.\***

> 13. Even then, Mr. Von Bergen was unsure that they had any right to bring a claim because of remarks made by Mr. Ray. Mr. Ray stated that the other farmer's claim had absolutely no merit. Mr. Ray also stated that he intended to bring a counterclaim against the farmer and demand that the farmer pay Mr. Ray's attorney fees.
>
> 14. Because of the unauthorized trades Mr. Ray made, the Von Bergens incurred losses of approximately $100,000.

Next >>

\*Denotes required field

© 2001 National Futures Association
Claim Help

himself after the commencement of the hearing because a party failed to disclose information which may be grounds for objecting to the arbitrator, the party withholding the information shall be deemed to have waived his right to object to proceeding with the remaining two arbitrators. If a replacement is appointed after the commencement of the hearing, the Panel shall determine whether all or any part of any prior hearing sessions shall be repeated.

**[¶6523.6] (f) Ex Parte Contacts.**

No party to the arbitration, or any representative thereof, shall communicate with any Panel member regarding the arbitration, other than inquiries concerning the status thereof, except at the oral hearing or in writing on notice to the other parties.

**[¶6524-6528] [Reserved]**

**[¶6529] SECTION 4. TIME PERIOD FOR ARBITRATION.** *[Adopted effective February 18, 1992. Effective dates of amendments: March 24, 1994; June 7, 1996 and June 23, 1997.]*

No Demand for Arbitration may be arbitrated under these Rules unless a Demand or notice of intent to arbitrate (See Sections 5(a) and (c) below) is received by NFA within two years from the date when the party filing the Demand for Arbitration knew or should have known of the act or transaction that is the subject of the controversy. No counterclaim, cross-claim or third-party claim may be arbitrated under these Rules unless it is received by NFA within two years from the date when the party asserting the counterclaim, cross-claim or third-party claim knew or should have known of the act or transaction that is the subject of the counterclaim, cross-claim or third-party claim or it is served on NFA within 45 days from the date of service of the Demand for Arbitration on the Respondent by NFA, whichever is later. NFA shall reject any claim that is not timely filed. If, in the course of any arbitration, the Panel determines that the requirements of this section have not been met as to a particular claim, the Panel shall thereupon terminate the arbitration of the claim without decision or award.

**[¶6530-6534] [Reserved]**

**[¶6535] SECTION 5. INITIATION OF ARBITRATION.** *[Adopted effective February 18, 1992. Effective dates of amendments: May 1, 1994; March 12, 1996; June 7, 1996; June 23, 1997 and June 1, 1999.]*

An arbitration proceeding under these Rules shall be initiated as follows:

**[¶6535.1] (a) Notice of Intent to Arbitrate.**

If the two-year time limit under Section 4 of these Rules is close to expiring, a person wanting to file a Demand for Arbitration may notify NFA, either in writing or orally, of such person's intent to arbitrate. NFA shall maintain a record of the receipt of each such notice and shall promptly provide such person with a copy of these Rules and a Demand for Arbitration form.

7-1-99

[¶6535.2] (b) [
Arbitrate.

If a person who
arbitration, such
person with a c
Section 5(a) ab

[¶6535.3] (c)

NFA shall pr
Any Demand fe
not accompanie
that event, suc
together with a
shall reject any
which the appr

[¶6535.4] (d)
(1) NFA sh
Arbitration on
(2) If a gua
Respondent, N
Arbitration or
the acts and
intervene in tl

[¶6535.5] (e
The Respon
of service of
Respondent s
Any Membe:
5(d)(2) above
an Answer ar
date of servic
The Member
of interventi
that is not de

[¶6535.6] (
If any cou
terclaim or c
Section 11 t
incomplete,
returned by
counterclaim
lowing servi
has not been

EXHIBIT

3

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

JUDGE RONALD GUZMAN

03C 1115

# Civil Cover Sheet

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the Northern District of Illinois.

| | |
|---|---|
| **Plaintiff(s):** Stephen Ray, Walter Thomas Price, The Price Futures Group, and E D & F Man | **Defendant(s):** Melvin Von Bergen, Michael P. Von Bergen, and Bobette K. Von Bergen |
| County of Residence: Cook County | County of Residence: McHenry County |
| Plaintiff's Atty: James Koch<br>Gardiner Koch & Weisberg<br>53 W. Jackson Blvd. Suite 1550,<br>Chicago, IL 60604<br>312-362-0000 | Defendant's Atty: |

II. Basis of Jurisdiction:           3. Federal Question (U.S. not a party)

III. Citizenship of Principal
Parties (Diversity Cases Only)
                 Plaintiff:- **N/A**
               Defendant:- **N/A**

**DOCKETED**
**FEB 14 2003**

IV. Origin :           1. Original Proceeding

V. Nature of Suit:           850 Securities / Commodities / Exchange

VI. Cause of Action:           Declaratory Judgment 28 U.S.C. 2201

VII. Requested in Complaint
       Class Action: **No**
       Dollar Demand: **Injunctive relief and costs and attorneys fees**
       Jury Demand: **No**

VIII. This case **IS NOT** a refiling of a previously dismissed case.

Signature: *James Koch*

Date: 2/13/03

If any of this information is incorrect, please go back to the Civil Cover Sheet Input form using the Back button in your browser and change it. Once correct, print this form, sign and date it and submit it with your new civil action. **Note: You may need to adjust the font size in your browser display to make the form print properly.**                    Revised: 06/28/00